(No. 33012.—

THE PEOPLE *ex rel.* Alco Deree Co., Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed March 17, 1954.*

MAURICE J. NATHANSON, (COHON & GOLDSTEIN, and FISHER, HASSEN & FISHER, of counsel,) all of Chicago, for appellant.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and JOSEPH F. FOX, of counsel,) for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

After a trial, the circuit court of Cook County dismissed a petition which sought a declaration that the zoning ordinance of the city of Chicago as amended on December 3, 1942, was void in its application to the property of the plaintiff, Alco Deree Company, and a writ of *mandamus* to compel the issuance of a building permit allowing the company to construct a two-story brick building on its property. The plaintiff appeals directly, the trial judge having certified that the validity of a municipal ordinance

is involved and that, in his opinion, the public interest requires a direct appeal.

Plaintiff is engaged in the steel fabricating business and manufactures transmissions for washing machines, refrigerators and candy vending machines. It owns a parcel of real estate at the northwest corner of California Avenue and Cullom Avenue, (4300 North) in Chicago, improved by a two-story building consisting of two floors and a partial basement. The building, erected in 1924 or 1925, extends 150 feet on California Avenue and 125 feet on Cullom Avenue. Plaintiff purchased the building in 1945, and in the following year moved its business from another location to its present site. The president of the company testified that the purchase price was $12,000 or $14,000. In 1946, plaintiff acquired the property here involved, which lies directly across the street to the south at the southwest corner of California and Cullom avenues. This parcel has a frontage of approximately 222 feet on California Avenue and a depth of approximately 126 feet to a public alley sixteen feet wide midway between California Avenue and Mozart Street, the next north and south street to the west. At the time the petition for *mandamus* was filed, this property was vacant except for a small one-story building at the northwest corner having a frontage of twenty-one feet on Cullom Avenue and extending south approximately forty-two feet. That building was then being used by plaintiff for the storage of tools, dies and metals in connection with its business conducted in its main plant across the street, and had been so used since its purchase in 1946. Plaintiff alleged that it intended to wreck the small building and to erect a modern two-story building to be used for offices, metal processing and a storage warehouse for raw materials awaiting processing in its business. Replacement value of the small building was estimated at $4000.

California Avenue is a half-section line street extending north and south. The proposed building would stand

on the west side of California Avenue between Berteau Avenue (4200 North) to the south, and Cullom Avenue to the north. Immediately south of the subject premises is a one-story building of the United Tool and Machine Works, the only building on the west side of the block extending from Berteau Avenue to Cullom Avenue. This building has a frontage of fifty feet on California Avenue and a depth of 80 feet. With the single exception of plaintiff's small warehouse building there were no buildings on the west side of the block either south or north of the building of the United Tool and Machine Works at the time the petition in this case was filed.

Directly across the street to the east an entire tract of approximately eighty acres, extending from Irving Park Road on the south to Montrose Avenue one-half mile north, and eastward to the north branch of the Chicago River, is being developed into a park and playground by the Chicago Park District. For many years prior to 1938, brick manufacturing companies had excavated and operated clay pits on the property. The old worked-out pits were used by the city from 1924 to 1937 as places for dumping rubbish. As a result, these old pits were refilled until their levels were slightly above the street grades. For a more detailed description see *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138. Conversion of this property into a park has proceeded rapidly. A small fieldhouse has been erected, driveways constructed, tennis courts laid out, and playgrounds are already in use. Landscaping is in progress; trees have been transplanted along California Avenue and along the driveways in the park.

There are small manufacturing and business properties in the block between Cullom Avenue and Montrose Avenue, immediately north of the subject property. On the west side of California Avenue, plaintiff's factory is the first building. Immediately to the north is a one-story building, with a frontage of approximately 100 feet, occupied by a manu-

facturer of plastic products. Next is a one-story warehouse building. Beyond are a vacant lot and a few old residences. To the north are the buildings of a dry-cleaning establishment, having a frontage of approximately 225 feet on California Avenue and a depth of 126 feet on Montrose Avenue to the alley. Immediately to the west of this plant and west of the alley is the factory of an ice machine company which makes equipment for air conditioning units. A filling station is located on the northwest corner of California Avenue and Montrose Avenue. None of the uses in the block (4300 North California) are permitted uses in a commercial district under the present ordinance; they are manufacturing uses.

California Avenue south of the block containing the subject property, between Berteau Avenue and Irving Park Road, is partly residential. South of Berteau Avenue there are two two-apartment buildings at the northwest corner of the block extending to the alley, and there are three houses between Berteau Avenue and Irving Park Road. In addition, there are a cement contractor's yard, a plastering contractor's yard, and a machinery repair shop. The rest of the block is vacant. On the northwest corner of Irving Park Road and California Avenue is a gasoline filling station.

Mozart Street is residential in character; the entire block on both sides of the street between Berteau Avenue and Cullom Avenue is improved with apartment buildings and single family residences. The area west of Mozart Street, beginning with Francisco Street, is also largely, if not entirely, residential in character. Only on the west side of the block immediately north of the subject property are there manufacturing buildings to the virtual exclusion of apartment and single-family houses.

The original 1923 zoning ordinance of the city designated the half-mile strip on the west side of California Avenue between Irving Park Road and Montrose Avenue

for commercial purposes. The land occupied by the brick companies, with the exception of the frontages on Irving Park Road and Montrose Avenue, was zoned for manufacturing. Montrose Avenue between California Avenue and Mozart Street was zoned for commercial use. The east side of Mozart Street, located within 125 feet of plaintiff's property, was placed in an apartment district. The south side of Montrose Avenue between California Avenue and Mozart Street was also zoned commercial. On December 3, 1942, the city council passed a rezoning ordinance changing the classification of the area in which plaintiff's vacant property is located, from Irving Park Road to Cullom Avenue, from commercial use to apartment use. The block immediately to the north between Cullom Avenue and Montrose Avenue remained commercial. The uses maintained by the United Tool and Machine Works, the plaintiff, the plastics company, the warehouse company, the dry-cleaners, and the ice machine company are all classified as manufacturing uses under the present ordinance, but because they antedate the amendatory ordinance, they are legal nonconforming uses.

Although there are two two-apartment buildings on California Avenue immediately south of Berteau Avenue, no apartment buildings have been built on California Avenue between Montrose Avenue and Irving Park Road between December 30, 1942, and the present time. Additional factories have been built. In August, 1953, George O. Ibsen purchased two lots, having a frontage of fifty feet on California Avenue in the 4200 block—the most recent sale of real estate within a half-mile of the subject property. He testified that he bought the property for the purpose of building a home and because "a beautiful park on California Avenue" was being developed and factories would not be allowed in the vicinity, "I bought that location to build a home because of the park and because of the beauty of the neighborhood."

Plaintiff charges that insofar as the rezoning ordinance of December 3, 1942, prohibits the use of the property in question for manufacturing purposes it is arbitrary, capricious and unreasonable, and bears no relation to the public health, safety, comfort, morals and public welfare, and is therefore void.

The established principles by which the constitutional validity of zoning ordinances is determined have been so recently stated that they need not be here reiterated. (*Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162; *Kinney* v. *City of Joliet,* 411 Ill. 289; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Galt* v. *County of Cook,* 405 Ill. 396.) The character of the property in the immediate neighborhood is of course of vital importance. Plaintiff's characterization of California Avenue in the half-mile between Irving Park Road and Montrose Avenue as a manufacturing street is but partly true. The description of the property on North California Avenue in the vicinity of plaintiff's property, not only in the 4200 block but in the blocks south and north of plaintiff's property, discloses that the block to the north is occupied principally by companies engaged in what has been aptly described as "light manufacturing." The property to the south is partly residential in character and partly manufacturing. The block facing California Avenue on which the subject property is located is vacant with the exception of a one-story building with a frontage of but fifty feet. It does not follow from the fact that much of the property in the next block north is used for legal nonconforming purposes that the subject property should be so used. From the description of the west side of California Avenue between Irving Park Road and Montrose Avenue it is clear that its complexion is mixed; part is predominantly manufacturing, part is largely vacant, and another part is mixed.

This half-mile is far different in character from Kedzie Avenue between Foster Avenue and Bryn Mawr Avenue,

described in *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265, cited by plaintiff. The outstanding fact with respect to the character of the property in the area of plaintiff's property is the increasingly dominating influence of the large area dedicated to public park purposes. The improvement of this eighty-acre tract is nearing completion, and its playgrounds are already being used by children living in the neighborhood. With the improvement in progress it is apparent that the park area will shortly dominate, if it does not do so already, the character of the property immediately to the west. The presence of the park will necessarily add to the attractiveness of plaintiff's vacant property for apartment use. That such attraction was lacking when the park property was an old clay pit is immaterial. So large a park will naturally draw young children to its playgrounds, older boys and girls to its tennis courts, and residents of the entire area to its other facilities. If plaintiff's property is used for commercial purposes, the danger to persons going to and from the park from increased truck and passenger vehicle traffic incident to commercial expansion such as plaintiff contemplates would obviously be increased. A consideration of all the facts and circumstances impels the conclusion that the rezoning ordinance, to the extent plaintiff's vacant property is concerned, was not only reasonable but, because of the major improvement directly across the street, highly desirable. Construing the evidence most favorably to plaintiff, it merely shows a legitimate difference of opinion as to the reasonableness of the amendatory zoning ordinance.

To ascertain whether an alleged invasion of property rights by a zoning ordinance is unreasonable and confiscatory, the degree to which values are diminished by the restrictions of the ordinance must always be considered in connection with the facts of the particular case. (*Galt* v. *County of Cook,* 405 Ill. 396; *Forbes* v. *Hubbard,* 348 Ill. 166.) The highest and best use of the property imme-

diately involved is, however, but one factor to be considered in determining the validity of a zoning ordinance. Effect upon the value of other property must also be considered. Here there is evidence that the proposed use is the highest and best use of the property involved. There is also evidence that such a use would lessen values in the residential area to the west. Another factor important in the present case relates to the public welfare. Erection of a two-story factory building, as requested, would mean greatly increased truck and passenger vehicle traffic in and near the new factory. It appears that additional factories in the immediate vicinity of the park would create additional hazards and danger to the safety of persons availing themselves of the facilities of the park. The possibility of increased hazard to children going to and from the park cannot be ignored. The fact that, as plaintiff's building consultant testified, and as defendant concedes, the property in question may be more valuable if zoned for commercial use than for apartments is not decisive. (*Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162; *Neef* v. *City of Springfield,* 380 Ill. 275; *Evanston Best & Co. Inc.* v. *Goodman,* 369 Ill. 207; *Rothschild* v. *Hussey,* 364 Ill. 557.) This fact exists in nearly every case where the intensity with which property may be used is restrained by zoning laws. The extent to which property values are changed by a zoning ordinance is, of course, a proper consideration in determining its validity, but the profit accruing to individual property owners if zoning restrictions were removed must always be weighed against the detriment to the public welfare resulting from such action. (*Evanston Best & Co. Inc.* v. *Goodman,* 369 Ill. 207.) As stated in the landmark case of *City of Aurora* v. *Burns,* 319 Ill. 84: "Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs. * * * No general zoning plan, however,

can be inaugurated without incurring complaints of hardship in particular instances. But the individual whose use of his property may be restricted is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration."

Plaintiff relies heavily upon *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138. The property there involved was located on the north side of West Irving Park Boulevard at about the 2700 block, with a frontage of 210 feet on Irving Park Boulevard and extending north 400 feet. It was a part of the tract which is now a park. The property was rezoned from industrial to apartment use. At that time, the tract was not suitable for apartment or residential development because of the nature of the surrounding property and the soil conditions. The factual situation has changed. Conversion of the property to a public park is nearing completion, and it is the present rather than the past character and use of the large area devoted to park purposes which is to be considered in determining the reasonableness of the rezoning of plaintiff's property. As the court there stated, "The decree does not prevent the city from making future amendments affecting the same property if conditions so change as to warrant a rezoning which would not be arbitrary and unreasonable." 395 Ill. at 153.

Plaintiff, although a purchaser of property upon which a restriction had previously been imposed by a zoning ordinance, can nevertheless attack the validity of the restriction. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Harmon* v. *City of Peoria,* 373 Ill. 594; *Forbes* v. *Hubbard,* 348 Ill. 166.) It does not, however, occupy as favorable a position in challenging the validity of the zoning ordinance as an owner who purchased prior to the rezoning

and in reliance upon an existing ordinance, as did the owner in *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138. Plaintiff has failed to show by clear and affirmative evidence that the enactment of the amendatory zoning ordinance constituted arbitrary, capricious and unreasonable municipal action.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*