(No. 34241.—▆▆▆▆▆▆▆

JOHN A. BOLGER *et al.*, Appellees, *vs.* THE VILLAGE OF MOUNT PROSPECT, Appellant.

*Opinion filed March 20, 1957.*

FRANK M. OPEKA, of Chicago, for appellant.

FRANK P. ZALESKI, of Chicago, (SAMUEL T. LAWTON, JR., of Chicago, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A judgment order of the circuit court of Cook County declared void the zoning ordinance of the village of Mount Prospect, in so far as it classifies the property of the plaintiffs, John A. and Adelaide Bolger, in a residential use district. The village appeals to this court on the trial judge's certificate that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal.

Plaintiffs' property is an unimproved tract of 15 vacant lots. It is located at the northeast corner of the intersection of Main Street (State Route No. 83) and Central Road, with a frontage of 380 feet on Main Street and 132 feet on Central Road. In 1926 it was classified as business property. On May 6, 1944, the village adopted a comprehensive amendment to its zoning ordinance which classified it as "R-1 duplex residence." On March 18, 1948, upon petition of the then owners, it was classified as "R-1 single-family residence." Plaintiffs recently purchased the tract, and they want to improve it as a large neighborhood shopping center, consisting of food, retail and service stores.

Mount Prospect is a rapidly growing residential community northwest of Chicago. Since 1950 its population has increased from 4000 persons to over 11,000, and the number of dwellings from 1147 to 3514. Both Main Street (Route No. 83), a four-lane highway running north and south, and Central Road, a two-lane thoroughfare, are heavily traveled. Estimates of the volume of traffic on Main Street varied from 9000 vehicles per day to 4000 per hour, and much of the traffic is commercial.

At the north end of the block in which this property is located there are three houses that face Main Street. They are six to eight years old and were estimated to be worth from fifteen to seventeen thousand dollars each. In the east half of the block there are nine residences, the southernmost facing Central Road. That house and four others

adjoin the subject property on the east. With the exception of a filling station eight blocks to the east, all of the property north of Central Road and east of Main Street is zoned residential. This is the principal area of new residential construction.

There has been a nursery and greenhouse at the northwest corner of Main Street and Central Road for more than thirty years. It was originally a nonconforming use, but the property was recently rezoned as business, to permit rehabilitation of the structures. With this exception, all of the property west of Main Street and north of Central Road is zoned for residential use. This is the older residential section of the village.

There is an elementary school immediately south of the subject property, across Central Road, on the southeast corner of the intersection. With this exception, all the property for several blocks south on Main Street is zoned and used as commercial property. This is the central business area of the village. The business uses consist mainly of grocery stores and various types of retail and service establishments, including a theater, an auto sales agency and a bank.

On the southwest corner of Main Street and Central Road there is a gasoline filling station consisting of two pumps directly in front of a house facing Main Street, and three on Central Road. A small garage, which has been there at least twenty years, and a lawnmower repair shop face Central Road.

It is unnecessary to restate at length the applicable principles. A zoning classification must be upheld if it bears any substantial relation to the public health, safety, comfort, morals and welfare. (*La Salle Nat. Bank* v. *City of Chicago,* 4 Ill.2d 253.) Plaintiffs contend that no such relation exists. They claim that their property is characterized for zoning purposes by the adjacent business uses, the business zoning classification of the property at the other

corners of the intersection, and the heavy volume of traffic on the abutting highways, and that its highest and best use is as a site for a shopping center. Defendants maintain that the property is characterized by the adjoining residential property, and that the abutting highways are natural zoning boundaries.

Plaintiffs presented three witnesses: a city planner, a local realtor, and an experienced appraiser. Basing his testimony on the official village zoning map of 1944, the planner testified that an inadequate amount of property in the village is zoned for business use, and that plaintiffs' property would be worth 3 to 3½ times as much as business property as it would be worth if used residentially. He also testified that the cost of essential services would be less than with single-family uses, since there would be no additional use of school facilities. As to the adjoining residences, he said that the proposed use of the northern part of the tract for parking stalls would operate as a buffer zone between the shopping area and the homes to the north. He expressed the view that the property was unsuitable for residential purposes because of the abutting highways and business uses, and that if houses were built on this land they would have to be constructed so cheaply, in order to be salable, that there would be risk of future blight.

The local realtor testified that there was a shortage of business property in Mount Prospect; that he received constant inquiries for such property, and that available property consisted of either 25 or 50-foot lots and was therefore unsuitable for development. In his opinion the property is worth $15,000 for residential purposes, and $110,000 for commercial development. He stated that houses on Main Street were extremely difficult to sell.

The appraiser valued the premises at $29,025 for residential purposes, and $116,100 for business purposes. He testified that the property would produce approximately

$9000 annually in real estate taxes if used for commercial purposes, plus an additional $12,500 from the village's half cent share of the retailers' occupation tax, based on the assumption that a shopping center of about 10,000 square feet should produce an estimated $2,500,000 per year gross sales.

To show a reasonable basis for the existing classification of the property the village produced five witnesses: the school superintendent, three property owners, and a city planner. The school superintendent testified that Central School is one of four schools serving the village; that it has an enrollment of 550 and maintains a kindergarten. In his opinion, a shopping center on the subject property would create a traffic hazard to the 121 children who use the intersection four times a day.

The three property owners stated that they had bought their homes upon the assumption that the whole block would remain residential, and that it would depreciate their property if the subject property was used for a shopping center. They testified also that present shopping facilities were adequate.

The expert witness testified concerning the claimed need for additional business property in Mount Prospect. He stated that the amount of property so zoned was actually over 2 per cent, when amendments since 1944 are taken into consideration, rather than the figure of 1.119 per cent testified to by plaintiffs' expert. He expressed the opinion that the subject property would not make a good shopping center, because it is too small, too elongated and too close to the downtown area, and is located in a residential type area. He pointed out that there are now six food stores in the village, one within a block of the property, so that there is no showing of need for the proposed center. And he testified that a prime cause of blight has been the over-zoning of property along main arteries of travel for commercial uses, a practice that was formerly quite common.

In our opinion plaintiffs have failed to show that the zoning ordinance, as applied to their property, is arbitrary, confiscatory, or discriminatory, as charged in their complaint. It is true that plaintiffs' property would be worth more if zoned for commercial purposes. But that is true in nearly every zoning case in which the use of property is limited. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350.) That factor is of course to be considered in determining the validity of a zoning ordinance, but it is not of itself determinative, particularly where, as here, the proposed use would depreciate the value of other property in the area. *People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350.

Plaintiffs have charged that their property will be relatively valueless unless rezoned. They bought it shortly before they began this action; the record does not show what they paid for it. A purchaser of property is not precluded from challenging a pre-existing zoning restriction, (*Harmon* v. *City of Peoria,* 373 Ill. 594,) but the fact that he purchased in the face of an existing restriction has a bearing. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350; *cf. Evanston Best & Co., Inc.* v. *Goodman,* 369 Ill. 207.) It may well be that houses built on this land would not be as valuable as those located farther away from the business area. That fact, however, hardly shows confiscation. The property was zoned for single residential use in 1948 at the request of its then owners, and thereafter two-thirds of the block was built up with residences.

Nor have plaintiffs proved unconstitutional discrimination. The typical case for setting aside a zoning classification occurs when the subject property is surrounded by property zoned for business uses. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321.) Plaintiffs seek to show discrimination by claiming that business uses are permissible

on the other three corners at the intersection. The nursery is a nonconforming use and the school is a permitted use in all R-1 single-family residence districts. Ideally, perhaps, the school should be located in the center of a residential district. But located as it is, it can properly be regarded as a buffer between the central business district and the residential area to the north.

The fixing of boundary lines, unless arbitrary or capricious, is a matter of legislative judgment which courts will respect. Necessarily, residential property immediately abutting the line will be less valuable than property more remote from the boundary of a commercial zone. (*DeBartolo* v. *Village of Oak Park,* 396 Ill. 404; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.) But that affords no justification for the constant erosion of such boundaries. "Where persons have bought property in a certain district under a general zoning ordinance, they have a right to rely upon the rule of law that the classification will not be changed unless the change is required for the public good." (*Wesemann* v. *Village of La Grange Park,* 407 Ill. 81.) Indeed, this reliance is the very basis of zoning.

The evidence discloses a legitimate difference of opinion concerning the reasonableness of the challenged zoning classification in its application to a particular parcel of property. This being so, the legislative judgment of the municipal authorities should be respected. *Fox* v. *City of Springfield,* 10 Ill.2d 198; *Mahoney* v. *City of Chicago,* 9 Ill.2d 156; *Jacobson* v. *Village of Wilmette,* 403 Ill. 250.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*