(No. 36193.

ELMHURST NATIONAL BANK, Trustee, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed May 19, 1961.—Rehearing denied September 20, 1961.*

John C. Melaniphy, Corporation Counsel, of Chicago, (Sydney R. Drebin, Assistant Corporation Counsel, and Robert J. Collins, Special Assistant Corporation Counsel, of counsel,) for appellant.

James R. Quinn, J. Richard Stanton, and Philip R. Toomin, all of Chicago, for appellee.

Mr. Justice Bristow delivered the opinion of the court:

This is a direct appeal by the defendant city of Chicago from a declaratory decree entered by the circuit court of Cook County holding a city zoning ordinance unconstitutional as applied to certain property owned by plaintiff Elmhurst National Bank, as trustee. The constitutionality of this ordinance depends upon whether the residential clas-

sification of this property, which bars plaintiff's proposed construction of a supermarket with a 70-car parking lot, is arbitrary and unreasonable.

The sequence of events appearing in the record shows that on December 28, 1956, plaintiff acquired title to the subject premises located at 6834 Northwest Highway, Chicago, through a deed which did not disclose the amount of plaintiff's investment and was marked "no taxable consideration." At that time the property was zoned residential. It had been so classified in 1923 and again in 1942. On May 29, 1957, the city of Chicago perpetuated that classification in a comprehensive zoning ordinance adopted after extensive hearings and research. A few weeks prior to the adoption of that ordinance, plaintiff, on May 2, 1957, leased the property to Samuel H. Krom, to operate a retail shopping center. The lease provided that the parties were aware of existing zoning limitations restricting the property to residential uses, that application for rezoning would be made, and that the proposed lease would take effect only when the rezoning was accomplished. Krom, in turn, had an agreement with the National Tea Company to lease the property if commercial zoning were obtained.

On July 11, 1957, plaintiff filed an application to change the zoning from residential to restricted commercial (B2-1) in order to construct a large food store and several additional stores with an estimated 70-car parking arrangement with entrances and exits on Northwest Highway and Ozark Avenue. After hearings before the building and zoning committee, the city council on April 8, 1958, following the recommendations of the building and zoning committee, unanimously denied plaintiff's application. Plaintiff, nevertheless, ordered a survey, prepared plans for the development of the property, and instituted this declaratory judgment proceeding.

From the evidence adduced in this action, it appears that the subject property, which is on the southeast corner of

Northwest Highway and Ozark Avenue, is near the western boundary of the city of Chicago, and approximately 650 to 800 feet from Park Ridge. The block in which this property is located is bounded on the north by Northwest Highway, on the west by Ozark Avenue, on the south by Olmstead Avenue, on the east by Overhill Avenue, and is bisected from east to west by an alley. The north boundary of the subject property itself runs some 288 feet along Northwest Highway. It is directly across the street from a two-year-old apartment building containing 27 apartments, built at a cost of $350,000 and charging rentals of $145 to $190 a month, which bring a total gross annual income of approximately $50,000. The west boundary of the subject property runs some 145 feet along Ozark Avenue, and is across the street from another new apartment building, built since the commencement of trial, and other single family dwellings. The south boundary of the subject property is the alley, beyond which are older but well preserved single-family residences on large lots which face Olmstead Avenue. On the east the subject property is bounded by a 35-year-old L-shaped apartment building, which faces both Northwest Highway and Overhill Avenue and which contains some 18 apartments. It is undisputed, therefore, that there are no commercial uses in the block in which the subject property is located.

With respect to the surrounding area, the record shows that the property both northward and southward is residential, with predominantly single-family dwellings. Westward along both sides of Northwest Highway to the city limits some two blocks away there is only residential property, including single-family dwellings on 50-foot lots and some new apartment buildings. Westward beyond the city limits, and in Park Ridge, there is also residential property along Northwest Highway. According to plaintiff's witness Koerner, there is a 4-flat building on the southwest side of the street, constructed within the last four years, several

newer 2-flat buildings, and some single-family dwellings. However, about ¼ mile westward from the subject property, along Northwest Highway in Park Ridge, there is a new General Mills office building which is set back from the street and landscaped. Further westward along the highway the area has been rezoned for office buildings by Park Ridge authorities.

Eastward, Overhill Avenue has been for many years the designated dividing line between the residential and commercial areas. East of Overhill Avenue there is the Edison Park shopping center, which includes a gas station, an A. & P. Food Market, a cleaner, and other stores.

According to the testimony of plaintiff's witnesses, the subject property, as presently zoned (which is the same as it was at the date of plaintiff's purchase), has a value of $200 per front foot, whereas it would bring $350 to $400 per front foot if rezoned commercial. This increase in valuation is stressed by plaintiff's expert witnesses in urging that the highest and best use of the property is for commercial purposes. Other factors supporting their opinion include the traffic conditions, which were characterized as medium and varying at different times of the day; the proximity to the commercial boundary line on Overhill Avenue; the fact that the bus line terminates at Ozark Avenue and buses might be waiting across the street from plaintiff's property for as long as seven to nine minutes; and the rezoning for office buildings in Park Ridge.

While plaintiff's city planning consultant stated that the proposed retail shopping center would benefit the surrounding residential property, which he characterized as outmoded and of low value, defendant's expert witnesses claimed the supermarket and stores would lower the value of the residential property, particularly the new $350,000 apartment building across the street. The extent of such loss to the owners of residential property was estimated by one of defendant's witnesses to be between 10% and

20%. A realtor, Leland McCabe, explained that tenants do not want to be "on top of" commercial property and that noises and traffic of a supermarket would make the apartments less desirable. In this connection he pointed out that even though he kept his building rented, it brought lower rentals because of the gas station beyond Overhill Avenue, built after his building was constructed.

The realtors testifying for defendant further stated that the property is more suitable for residential purposes. They relied upon the fact that not only is all the property surrounding and across the streets from the subject property residential, including the new costly apartment building on Northwest Highway, but the entire area is residential in character northward, southward and westward from the subject property up to and beyond the Park Ridge boundary line for $\frac{1}{4}$ mile, and that the only commercial property is eastward beyond the long-standing boundary line on Overhill Avenue. They also testified that there is no need of further shopping facilities in view of the accessibility of the Edison Park shopping center beyond Overhill Avenue, and that a supermarket on the subject property would only aggravate traffic and increase danger for pedestrians.

On the basis of substantially the foregoing evidence, as well as certain exhibits of the area submitted by both plaintiff and defendant, the master recommended, and the circuit court held, that the ordinance was unconstitutional and void in its application to plaintiff's property.

In reviewing that judgment we note the great bulk of cases reiterating the rules that a zoning ordinance is presumed valid; that the burden is upon the person attacking its validity to establish by clear and affirmative evidence that it is arbitrary; that the courts should not overrule the decisions of municipal authorities where the reasonableness of the classification is detaable, and the action of the municipal authorities is not capricious; and that the validity of each zoning ordinance must be determined on its own

facts and circumstances. *Dalkoff* v. *City of Rock Island*, 17 Ill.2d 342; *La Salle Nat. Bank of Chicago* v. *County of Cook*, 12 Ill.2d 40, 46; *Krom* v. *City of Elmhurst*, 8 Ill.2d 104; *Liberty Nat. Bank* v. *City of Chicago*, 10 Ill.2d 137, 145; *Williams* v. *Village of Schiller Park*, 9 Ill.2d 596, 598; *Bullock* v. *City of Evanston*, 5 Ill.2d 22.

In determining the reasonableness of zoning ordinances the cases have also enumerated as relevant factors the extent to which the value of the property is diminished by restrictions (*Dalkoff* v. *City of Rock Island*, 17 Ill.2d 342); the extent to which the removal of the restriction would depreciate the value of other property in the area (*People ex rel. Alco Deree Co.* v. *City of Chicago*, 2 Ill.2d 350; *Liberty Nat. Bank* v. *City of Chicago*, 10 Ill.2d 137); the reliance on existing zoning ordinances (*Liberty Nat. Bank* v. *City of Chicago*, 10 Ill.2d 137; *Kennedy* v. *City of Chicago*, 11 Ill.2d 302); the suitability of the property for the zoned purpose (*Krom* v. *City of Elmhurst*, 8 Ill.2d 104, 112; *Myers* v. *City of Elmhurst*, 12 Ill.2d 537, 544); the existing uses and zoning of nearby and surrounding property (*People ex rel. Alco Deree Co.* v. *City of Chicago*, 2 Ill.2d 350, 356; *La Salle Nat. Bank* v. *City of Chicago*, 4 Ill.2d 253, 256); and the extent to which the ordinance promotes health, safety, morals or general welfare of the public.

Viewing the instant case in the light of these guiding considerations, it is evident that the subject property has been residential since the original zoning in 1923, that the suitability of this use was reviewed and perpetuated by the municipal authorities in 1942 and again in 1957, and that plaintiff purchased the property with full knowledge that it was zoned residential. Although there is no evidence of plaintiff's investment, it is not unreasonable to suppose that the price paid was commensurate with that purpose. Under these circumstances, it can hardly be found that the ordinance has diminished the value of plaintiff's

property or is confiscatory. Nor does it become confiscatory by virtue of plaintiff's evidence that the property as zoned residential has a value of $200 per front foot, whereas if it is rezoned commercial it will bring $400 a front foot, for such an increase in value exists in most cases where the restriction on intensity of use is removed, and is not decisive of the validity of the ordinance. *People ex rel. Alco Deree Co. v. City of Chicago,* 2 Ill.2d 350, 358.

This precise point was emphasized by the court in *Liberty Nat. Bank v. City of Chicago,* 10 Ill.2d 137, in sustaining an ordinance restricting the property to residential uses. The court stated at p. 144: "The undisputed testimony is that plaintiffs knew the property was zoned for residence purposes when they bought it and that they paid a price consistent with its use for that purpose. The fact that its value will now be enhanced if a business use is permitted does not justify a conclusion that the ordinance is confiscatory. *First Nat. Bank of Lake Forest v. County of Lake,* 7 Ill.2d 213, 227."

Furthermore, although plaintiff submitted evidence that the highest and best use of the subject property was commercial, that factor, even if true, is not decisive where there is evidence that the removal of the restrictions would lessen values of other property in the area. *People ex rel. Alco Deree Co. v. City of Chicago,* 2 Ill.2d 350, 358; *City of Aurora v. Burns,* 319 Ill. 84.

In this connection, there is testimony of a realtor that the adjacent and nearby apartment buildings would sustain a loss of between 10% and 20% if the property were rezoned commercial, since apartments facing the adjoining stores are less desirable because of the noise and traffic. Moreover, this affected residential property can hardly be deemed outmoded and of low value, as labelled by plaintiff's city planner, since, as hereinbefore noted, it includes the new $350,000 apartment building across the street and other new construction in the area, in addition to older but well

preserved apartment buildings and single-family units on large lots. Thus, in the instant case there is not only the element of loss by surrounding property owners if the restriction were removed, but substantial recent investments made in reliance on the existing zoning.

With respect to the suitability of the subject property to the zoned purpose, plaintiff argues that it is more suitable for commercial use in view of the traffic at the intersection, and the fact that Ozark Avenue is the end of the bus line and buses may be parked across the street from the subject property pending their scheduled departure. It may be noted, however, that there is presently a new apartment building on Ozark Avenue, adjacent to that bus stop. Although heavy traffic has been deemed a factor militating against residential uses (*Tews* v. *Woolhiser,* 352 Ill. 212; *Petropolous* v. *City of Chicago,* 5 Ill.2d 270), the fact that a street is a main artery of traffic, as in the instant case, is not conclusive that it is most suitable for commercial use. (*La Salle Nat. Bank* v. *City of Chicago,* 4 Ill.2d 253; *Herzog Building Corp.* v. *City of Des Plaines,* 3 Ill.2d 206.) In the *La Salle National Bank case* the court sustained residential zoning on property at the intersection of two main thoroughfares on which there were intersecting bus lines, and in the *Herzog case* the court sustained residential zoning for property fronting on a State highway.

In the case at bar, since the evidence is conflicting with respect to the traffic conditions in the area, and whether the proposed supermarket would aggravate that situation and affect the safety of the residents, it cannot be concluded that the traffic elements makes the property suitable only for commercial purposes. The question is certainly debatable.

In determining the effect of the surrounding and nearby property uses, as previously noted, it is undisputed that there is no commercial use in the entire block in which the subject property is located, and that it does not face any such commercial use. Plaintiff, however, claims that the proximity to

the commercial area east of Overhill Avenue warrants re-zoning the subject property for commercial use. It is evi-dent that Overhill Avenue is the long-standing boundary line between commercial and residential areas. As pointed out in *Williams* v. *Village of Schiller Park,* 9 Ill.2d 596, it is axiomatic that zoning must begin and end somewhere, and the fact that property is near a boundary line does not *per se* justify rezoning.

In the *Williams case* the court sustained a residential classification even though the subject property was con-tiguous to an industrially zoned area where there was evi-dence, as in the instant case, of loss in market value likely to result to nearby residences from the requested change to a light industrial classification. In the case at bar, the subject property does not even border the commercial area or the Overhill Avenue dividing line, since its eastern boundary is adjacent to the L-shaped apartment building; hence there is even more cogent reason to respect the established bound-ary.

Nor does the commercial zoning in Park Ridge control the classification of the subject property, as plaintiff sug-gests. Of greater significance is the fact that the west boundary of the subject property itself faces residential property, and that westward along Northwest Highway on both sides of the street and extending beyond the Park Ridge boundary line the area is entirely residential. It is these contiguous and nearby uses which should be, and are, determinative of the character of the subject property, rather than the zoning authorizing office buildings ¼ of a mile away in Park Ridge. *La Salle Nat. Bank* v. *City of Chicago,* 4 Ill.2d 253.

Moreover, our emphasis on the established character of the property directly across the street from the subject property is in accord with the reasoning in *Forbes* v. *Hub-bard,* 348 Ill. 166, cited by plaintiff. There it was held that where one side of a main artery has been built up com-

mercial, it would be confiscatory to restrict the other side to residential. Conversely, where one side of a main artery has been built up residential, and costly construction at that, as in the instant case, it should be considered equally confiscatory to change the zoning to allow commercial use for the other side of the street.

Thus, as appears from the testimony and exhibits of the area, the proposed shopping center on the subject property would constitute a small island of commercial use in a residential area. If plaintiff is allowed to create such an island, then every vacant lot in the vicinity of a commercial boundary line would become a potential threat to owners of the surrounding residential property.

In addition to this review of the salient factors affecting the reasonableness of the zoning classification, reference must be made to the pertinency of particular cases relied upon by the parties. In *Dalkoff* v. *City of Rock Island,* 17 Ill.2d 342, cited by plaintiff, it appears that in sharp contrast to the case at bar, the property was not only enveloped by nearby commercial uses, but was directly across the street from such uses as a filling station, a supermarket and a jewelry store, which had already depreciated the subject property. Consequently the residential restriction was held unreasonable.

In *Myers* v. *City of Elmhurst,* 12 Ill.2d 537, cited by plaintiff, the residential zoning ordinance was voided where it appeared that the subject property was directly across from a State truck weighing station and a water tower and a pumping station constructed by the city itself in this residential area, all of which had already diminished the value of the property and made it less suitable for residential purposes. Moreover, the planning commission in that case had recommended the zoning changes requested by plaintiff.

It is not clear just how the case of *Bullock* v. *City of Evanston,* 5 Ill.2d 22, where the court upheld an ordinance zoning property for office buildings, supports plaintiff's posi-

tion. Not only are the facts distinguishable, since no residences had been built on the subject tract or within three blocks of it during 40 years, nor was it likely ever to be developed for residential purposes, but the burden of establishing the suitability of the area in that case was not upon those who sought to have it zoned commercial, as in the case at bar, but upon those who sought to change the zoning to residential.

We also fail to perceive plaintiff's analogy to *Krom* v. *City of Elmhurst*, 8 Ill.2d 104. There the disputed tract, which was bounded by a gas station, was part of an intersection developed commercially on all three sides. Moreover, in contrast to the instant case, the evidence showed a need for such commercial property, and only uncertain detriment to nearby residential property if the area were rezoned.

In our opinion, neither the foregoing nor any other cases cited by plaintiff are authority for holding the residential zoning ordinance involved herein to be capricious and arbitrary. However, we do find that the case of *Liberty Nat. Bank* v. *City of Chicago*, 10 Ill.2d 137, is pertinent. The subject property involved the southeast corner of the thoroughfares of Palmer and Harlem avenues, which was rezoned from commercial to residential. Directly across from the property there was a gas station on the southwest corner of the intersection, and the second block south was rezoned for business purposes. The area was otherwise residential. In rejecting plaintiff's request to void the residential zoning ordinance in order to construct a food store, the court stressed factors present in the case at bar, such as the reliance by the surrounding property owners on the residential zoning restriction in making investments in their property; plaintiff's knowledge of the existing zoning limitations at the time of his purchase; and the fact that there was no need for such a store since ample shopping facilities were available in the area to the south; and the fact that

the proof did not show that the property was totally unsuited for the purpose for which it was zoned, or worth any less for residence purposes than it was at the time it was purchased.

In the light of these striking similarities between the *Liberty National Bank case* and the case at bar, sound reason demands that if the residential zoning ordinance in that case was sustained even though the property was across from a gas station and had originally been zoned commercial, then perforce the residential ordinance herein should be sustained where the subject property does not either touch or face commercial uses, and has been continuously zoned and rezoned residential since 1923.

It is our judgment that the circumstances herein, measured by the guiding principles and standards promulgated in our zoning case law, establish that the residential zoning ordinance, adopted by the city council after years of research and public hearings, was in no way capricious or arbitrary. Consequently, the circuit court erred in holding the ordinance unconstitutional as applied to plaintiff's property, and its decree is hereby reversed and the cause remanded, with directions to dismiss the complaint.

*Reversed and remanded, with directions.*