**Richard A. Berger, et al., Plaintiffs-Appellees, v. Village of Riverside, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 50,043.**

First District, Second Division.

April 5, 1966.

Tenney, Bentley, Guthrie & Howell, of Chicago (S. Ashley Guthrie and David C. Newman, of counsel), for appellant.

Harold R. Corwin, of Chicago, for appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a declaratory judgment order entered June 23, 1964, in the Circuit Court of Cook County which contained findings that certain provisions of the zoning ordinance of the appellant Village of Riverside have no relation to the public health, morals, safety, comfort or welfare as applied to the appellees' property, and constitute an unconstitutional deprivation of the appellees' property. The court ordered that the Village permit the appellees to construct an eleven apartment building on the property in question, even though the Village had zoned it for two-family dwellings.

As shown by findings made in the judgment order, the appellees are the owners of certain real estate located in the Village of Riverside and extending from the southwest corner of York Road and Harlem Avenue to the northwest corner of Shenstone Road and Harlem Avenue. The length of the property along Harlem Avenue is 218 feet, 2 inches; it extends along York Road 133 feet, 7⅜ inches; it has a length on Shenstone Road of 107 feet, 2⅜ inches. The development along both Shenstone and York Roads has been in the character of single-family residences. Harlem Avenue, on the other hand, is a major traffic artery with multiple-family dwellings and light business and commercial uses on both sides of the street.

The argument of the appellant Village is that the classification of this property for two-family dwellings is proper transitional zoning and acts as a buffer between the commercial and apartment character of

Harlem Avenue and the single-family residences on York and Shenstone Roads. The appellees insist that the character of the land is determined by Harlem Avenue and argue that they should be allowed to construct a multiple-family dwelling which use would be in keeping with the character of Harlem Avenue. They point out that there are single-family residences all through the area and that there is no transitional zoning provided for except for this parcel of land and the land immediately to the south, which extends less than a block along Harlem Avenue.

There is a map in evidence showing the property uses along Harlem Avenue for some distance in either direction from the subject property. Harlem Avenue is a north-south street and is in this area the dividing line between the Village of Riverside and the Village of Berwyn. The appellant Village of Riverside claims that the development on the Berwyn side of Harlem Avenue cannot be taken into account. It is argued that any zoning must begin and end somewhere and that a street is a perfectly good place to mark the end of one type of zoning and the beginning of another type. In support of this proposition, the Village cites Mundelein Estates v. Village of Mundelein, 409 Ill 291, 99 NE2d 144 (1951). That opinion reads in part:

> ". . . Appellants' position is based largely on the decision in Forbes v. Hubbard, 348 Ill 166, which stated that in zoning property of the character there involved, dividing lines should avoid making one side of a main artery of travel purely residential, where the opposite side is used as business property and has established its character as such. The Forbes case does not set any hard and fast rule as to the location of dividing lines along streets, and the decision was, as is true in all zoning cases, based on the peculiar facts of that case. The same facts

do not exist here, nor are the properties and locations involved substantially similar. It is true, also, that some physical features of a street such as width, gradient, and its utilization by various means of transportation may make it desirable, reasonable and best for public safety and convenience, that one side be zoned for residence purposes and the other side for commercial use. For the most part, despite the decision in the Forbes case, we have held that where the question of whether property should be characterized as residential or as commercial is fairly debatable, it is a question to be answered by the city council and not by this court. (Wesermann v. Village of LaGrange Park, 407 Ill 81; Neef v. City of Springfield, 380 Ill 275.) Zoning must begin and end somewhere, and we cannot, in this instance, say that it was arbitrary or unreasonable to make Lake Street a dividing line between zoning districts. The question of the character which attaches to appellants' property is certainly debatable, and as the trial court must have felt, we see no purpose in changing the characterization fixed by the village of Mundelein." 409 Ill 291, 296, 99 NE2d 144, 147, 148 (1951).

 It is a basic tenet of zoning law that each case must be decided on its own facts. There is no question but that a street can be a proper dividing line between zones; the only question is whether the zoning ordinance as applied to the parcel in question is reasonable. In determining this, the court must look to all the surrounding uses. The court should consider the uses on the other side of the street, even though that property is located in another Village. Forbes v. Hubbard, 348 Ill 166, 180 NE 767 (1932). Of course, the fact that the property across the street is zoned for apartment houses is not conclusive of the question at

bar, and does not foreclose the proper use of transitional zoning. It seems clear, however, that all the surrounding uses should be considered to determine whether a zoning classification is reasonable.

There is an exhibit in evidence showing the property uses along Harlem Avenue for some distance in either direction from the subject property. This map begins on the north with the Illinois Central Railroad tracks, and immediately to the south on the west side of the street—the side in Riverside—are four empty lots with a frontage on Harlem Avenue totaling 100 feet. Immediately south of these lots, Berkley Road intersects Harlem Avenue and the next block is devoted to business uses. The business uses as listed on the exhibit are a printing company, a drive-in, a cleaner and a gas station.

Across the street to the south of the gas station is another gas station, the next uses to the south being a beauty shop and a contractor's office. There then follows on this same block, 16 lots occupied by multiple-family residences. The next two lots are used for two-family residence purposes, and the following 13 lots are again occupied by apartment buildings. At the south end of this block are three lots occupied by a funeral home.

The next block to the south was originally zoned for two-family residence purposes, and the four southernmost lots on this block have been used for this purpose. Since the original zoning, however, the ordinance was changed to permit the development of the rest of the block for multiple-family residence purposes, and the land has been so developed. The land on Harlem Avenue in the following block is the subject property, which is vacant.

Immediately south of the subject property the land is zoned for two-family residence purposes, the same zoning as the subject property. This land is vacant except for a nonconforming use in the form of a four-story,

154

30 apartment building located on the southern 90 feet of that block. The first half of the next block is occupied by a single-family residence, the southern portion of that block containing a truck garage, a beauty shop, a delicatessen, and an insurance company office. The following block has a paint store, a restaurant, a florist, another beauty shop, a cleaner, a laundromat, a men's clothing store, a restaurant, a drug store and a drive-in restaurant. The short block at the southern end of the map shows a gas station.

Thus it can be seen that the west side of Harlem Avenue is devoted almost entirely to multiple-dwelling and commercial use. The entire area behind these lots, moreover, is used for single-family dwelling purposes.

On the east side of the street, located in the Village of Berwyn, immediately across the street from the subject property, are 10 lots devoted to multiple-family residence use. Of the 13 remaining lots on this block, 10 are being used for multiple-family residence purposes and three for single-family residences. The block north of this has nine lots used for multiple-family residences and 12 lots being used for business purposes including an auto repair shop and a restaurant and lounge. The block south of the block immediately across the street from the subject property has two lots used for multiple-family residence purposes and 33 lots devoted to business purposes.

It is unnecessary to discuss all the particular uses for this entire strip of land on the east side of Harlem Avenue. The exhibit shows that there are no more single-family residences on the east side of the street than on the west, and a greater proportion of the land is used for business purposes than on the west side of Harlem.

██ The question for determination here is whether the classification of the subject property as "B1 Residence District—Duplex" is a valid use of so-called

155

transitional zoning. It is clear that a municipality may choose to place a buffer zone between business and commercial uses on the one hand and single-family residences on the other. The difficulty here is that the Village of Riverside did not see fit to use transitional zoning in the form of duplex housing except for two blocks in this nine-block strip of land.

▪▪▪▪ The general principles of law to be applied to a case such as this are clear. We quote from Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 176 NE2d 771 (1961):

> "In reviewing [the] judgment we note the great bulk of cases reiterating the rules that a zoning ordinance is presumed valid; that the burden is upon the person attacking its validity to establish by clear and affirmative evidence that it is arbitrary; that the courts should not overrule the decisions of municipal authorities where the reasonableness of the classification is detabable [sic], and the action of the municipal authorities is not capricious; and that the validity of each zoning ordinance must be determined on its own facts and circumstances. Dalkoff v. City of Rock Island, 17 Ill2d 342; LaSalle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 46; Krom v. City of Elmhurst, 8 Ill2d 104; Liberty Nat. Bank v. City of Chicago, 10 Ill2d 137, 145; Williams v. Village of Schiller Park, 9 Ill2d 596; Bullock v. City of Evanston, 5 Ill 2d 22.
>
> "In determining the reasonableness of zoning ordinances the cases have also enumerated as relevant factors the extent to which the value of the property is diminished by restrictions (Dalkoff v. City of Rock Island, 17 Ill2d 342) ; the extent to which the removal of the restriction would depreciate the value of other property in the area (People ex rel.

Alco Deree Co. v. City of Chicago, 2 Ill2d 350; Liberty Nat. Bank v. City of Chicago, 10 Ill2d 137) ; the reliance on existing zoning ordinances (Liberty Nat. Bank v. City of Chicago, 10 Ill2d 137; Kennedy v. City of Chicago, 11 Ill2d 302) ; the suitability of the property for the zoned purpose (Krom v. City of Elmhurst, 8 Ill2d 104, 112; Myers v. City of Elmhurst, 12 Ill2d 537, 544) ; the existing uses and zoning of nearby and surrounding property (People ex rel. Alco Deree Co. v. City of Chicago, 2 Ill2d 350, 356; LaSalle Nat. Bank v. City of Chicago, 4 Ill2d 253, 256) ; and the extent to which the ordinance promotes health, safety, morals or general welfare of the public."

Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 401, 402, 176 NE2d 771, 774 (1961).

██ ██ Our Supreme Court specifically stated in LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, 46, 145 NE2d 65 (1957) that one factor the courts should consider in determining whether or not a zoning classification was reasonable was "the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [citing cases]." We note that except for a small parcel of land on the west side of Harlem Avenue immediately to the south of the Illinois Central Railroad tracks, the only vacant land on that side of the street is that which is zoned for two-family residence purposes. We also note that all the land zoned for two-family residence purposes is vacant with the exception of that parcel on which is situated the nonconforming four-story, thirty-apartment building. On the east side of the street, throughout this nine-block length of Harlem Avenue, there is only about 160 front feet of vacant property. This would seem to sug-

gest that the zoning for two-family residences is not economically feasible.

The evidence given by the witnesses at the two-day trial disclosed that the appellees purchased the subject property for $36,000 in 1961. At that time the land had its present zoning classification. Neither appellee made any inquiry concerning the permissible uses for this land. Mr. Berger said, "I took it for granted that it was zoned apartment because everything around there was apartment property." Of course, this fact does not prevent the appellees from challenging the validity of the zoning ordinance as applied to their property. American Nat. Bank & Trust Co. v. Chicago, 30 Ill 2d 251, 195 NE2d 627 (1964). The evidence shows that the appellees attempted to sell the property when they found that it was not zoned for apartment purposes, but according to Mr. Berger they could find no prospective customers for the property as long as it kept its present zoning.

George H. Kranenberg, a zoning expert, testified for the appellees. He stated that he had conducted a personal inspection of the property in question, and also investigated the surrounding area as to its zoning and its present uses. He said he was of the opinion that the highest and best use of the subject tract of land from a planning and zoning standpoint is for multiple-family use. He testified that the property was suitable for apartment use because of its size, shape and relationship to Harlem Avenue. He said that in his opinion the property had not been built up because the zoning of the land was unrealistic and incompatible with the existing zoning both in Riverside and Berwyn. Other expert witnesses also said that the highest and best use of the property in question was for multiple-housing purposes. One of these expert witnesses, George Korbel, chief appraiser for General Federal Savings and Loan Association of Cicero, Illinois, said that in his opinion

the construction of an apartment building on the site would not have an adverse effect on the value of the surrounding properties.

The Village of Riverside presented four expert witnesses. Howard R. Olson, staff consultant for the Northeastern Illinois Metropolitan Area Planning Commission and chairman of the Plan Commission of the Village of Riverside—the body which denied approval of the change in zoning for the subject property said that the land contains 26,000 square feet and that if subdivided for use in constructing two-family dwellings, three such structures could be erected since the zoning ordinance requires that each residence lot have an area of 7,000 square feet. This witness said there would be more traffic if an apartment building were built on the land and noted that twice the number of parking places would be required for the proposed apartment building than would be necessary for the three two-family residences.

The next witness for the appellant Village was Carl L. Gardner. After stating his background as a zoning consultant, he said that the idea of transitional zoning between Harlem Avenue and the single-family dwellings to the west, "shaped up very well in the basic structure of Riverside."

Other witnesses stated that the construction of an apartment building on the lot would decrease the value of the surrounding property. No figures were given as to how much depreciation there would be to the property on Shenstone Road if the apartment building were built. Two of the owners of property on Shenstone Road took the stand to object to the erection of an apartment building on the subject property because it would, in their opinions, change the character of Shenstone Road.

It has been argued that the property in question is different from the other property in that the other par-

cels face Harlem Avenue and have an alley running behind them so as to separate them from the single-family residences on the other side. We note, however, that there are several places along Harlem Avenue where business uses are permitted without an alley separating the property from the adjoining residential property. At one point, for example, there is a truck garage immediately next to a lot used for single-family residence purposes. Other business uses adjoining such residence lots include a beauty shop, a delicatessen, a paint store, a restaurant, a laundromat, and a drive-in restaurant. If the Village permits these uses to be situated on land contiguous to single-family residence lots, we think it is highly unreasonable for them to deny the owners of the subject property the right to build an apartment building on their land.

Nowhere else is there transitional zoning, and we do not think the Village has shown why these two blocks should be treated in a manner different from the rest of the property adjacent to Harlem Avenue.

 While it is true that from the evidence adduced at the trial it would seem that the appellees would suffer no great financial loss if the zoning were not changed, nevertheless, this cannot preclude them from challenging a classification which treats their property differently from other property similarly located. Zoning ordinances can be upheld only insofar as they subject the rights of private owners to the public good. Where, as in this case, it appears that the classification being imposed on the subject property is arbitrary and has little connection with the public health, safety and welfare, the owners of the land should succeed in their attempt to have the zoning ordinance declared invalid insofar as it applies to their property.

 The claim that an apartment building would increase traffic can be made for any of the apartment

buildings located on both sides of Harlem Avenue. There is no indication that this particular apartment building would add more traffic than any of the other like structures. As the Supreme Court has said, "While we have recognized traffic as a factor, it is not in itself entitled to too much weight since it is a problem in all but the most sheltered neighborhoods and is constantly getting worse." LaSalle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 146, 186 NE2d 46, 48 (1962).

■■■ The question is not whether the Village of Riverside can use transition zoning to create a buffer zone between Harlem Avenue and the residential areas, but whether they can create a so-called "transition zone" for two blocks along the street while permitting much wider uses everywhere else along Harlem. It is our opinion that the zoning ordinance of the Village of Riverside as applied to the property in question is unreasonable and arbitrary and has no reasonable connection with the public health, safety or welfare. For these reasons, the judgment order of the Circuit Court should be and is affirmed.

Judgment order affirmed.

LYONS and BURKE, JJ., concur.