AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff-Appellant, *v.* CITY OF HIGHLAND PARK, Defendant-Appellee.

(No. 74-133;

Second District (2nd Division)—June 30, 1975.

Conzelman, Schultz & Snarski, of Waukegan (Murray R. Conzelman, of counsel), for appellant.

Thomas H. Compere and Berle L. Schwartz, both of Highland Park, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Lake County in a declaratory judgment action whereby the plaintiff seeks to have the zoning ordinance of Highland Park declared invalid as to the subject property. The trial court after a hearing upheld the validity of the present zoning as it applied to the involved property.

The property in question is somewhat triangular in shape being about 190 feet on the north side, 73 feet on the south side, 226 feet on the east side and about 205 feet on the west side, containing some 27,688 square feet. It is presently zoned single-family residential. The property fronts on Pierce Avenue in the City of Highland Park and contiguous to it, immediately to the west, are lots fronting on St. John's Avenue, a thoroughfare, which runs generally northwest—southeast and intersects with Pierce Avenue about 100 feet southeast of the subject property. Although the lots immediately to the west fronting on St. John's Avenue are officially zoned multifamily residential, the actual permitted use was changed some years ago by court decree to "G" classification which is neighborhood business. The lot immediately adjoining to the south is zoned family residential but immediately on the other side of Pierce Avenue is a gas station. In short, immediately to the south and west of the property in question and backing up to it, are lots zoned for neighborhood business used by virtue of the court decree mentioned above. These lots are presently occupied by an office building, an apartment building and several small stores. Otherwise, the land use, in conformity with the established zoning, is single-family dwelling in all directions.

The plaintiff's witnesses testified that the parcel in question could more suitably be used for multifamily dwelling units, of which they could build eight (provided they were granted a slight variance from the required 28,000 square feet) than for single-family residences. The size and shape of the tract would allow only three-family residences under the present zoning. According to the plaintiff's witnesses the tract is well suited to multifamily dwelling occupancy because of the proximity of stores and a nearby commuter railroad station. Plaintiff's witnesses testified that the value of the parcel if used for multifamily purposes would be about $60,000, whereas the value for single-family residential use would be only about $39,000, a difference of $21,000.

The defendant's expert witness was in complete disagreement with the plaintiff's estimate of the difference in value for the respective uses of the property. He stated that he was familiar with the value of land in Highland Park and that comparable actual sales indicated a much lower price of the land for multifamily use than indicated by plaintiff's witnesses.

The plaintiffs' and defendant's witnesses also differed sharply as to the impact of the change in occupancy on the surrounding property—

mostly residential—the plaintiff's witnesses testifying the impact would be little or none and the defendant's expert being of the opinion that the change would definitely depreciate the value of the surrounding residential property. Mr. Shefner, a contractor who had previously attempted to subdivide the property into three lots for the purpose of building single-family residences on it, also testified he believed that building multifamily units on the property would adversely effect the single-family property nearby. The difference in effect of the zoning change on traffic and school problems and fire hazards was not considered by either side to be of great significance.

On the basis of this testimony the trial court found that the present zoning is suitable and that the removal of the restrictive use would not result in an increase in the value of the property; that the requested change would not increase the burden on schools, traffic, police or fire facilities; and that the only benefit to the owner for the requested purpose would not be from actual increased value but rather from the possibility of obtaining greater revenue from the proposed multifamily use.

The court also found that the proposed change in zoning "would depreciate the value and saleability of the existing adjoining single family residences."

It will be observed that this is not the typical confrontation often found in zoning cases between the presumed validity and reasonableness of the zoning ordinance and the right of the plaintiff to make the highest and best use of his land. The highest and best use was not that clearly established by the evidence, which seems to indicate that the property was quite suitable for use either for single-family residences or for multifamily occupancy, sofar as the size and location of it were concerned.

While the plaintiff did contend the size and location of the tract made it undesirable for single-family occupancy, the plaintiffs themselves (that is the beneficial owners of the trust) had previously arranged with a builder to build three single-family residences on the land and zoning for this purpose had been secured. They subsequently suspended the plan to build single-family residences and made another contract with the builder to be effective only upon the obtaining of multifamily zoning. The builder, Shefner, testified however, that while the original contract was still in force he had two persons definitely interested in purchasing the proposed single-family residences and an inquiry had been made in that regard by a third person. He testified he had no doubt, therefore, that the single-family residences would have been readily sold. On the other hand, there were aspects of the location, such as nearness to stores, the commuter railroad station and schools, which would have been an

inducement for persons interested in multifamily type of occupancy. On balance, therefore, it appears the property could profitably be used for either purpose and the highest and best use was not established as being that desired by the plaintiff rather than the existing use.

Nor did the evidence clearly establish the highest and best use from a purely financial aspect so as to make this a substantial factor in the decision. The plaintiff's expert maintained that the property was worth around $39,000 for residential lots whereas it was worth about $60,000 if used for condominiums but they were not offering it for sale for this purpose and the defendant's expert testifying on the basis of actual sales of comparable property in Highland Park said that the price of $60,000 was entirely unwarranted and the amount that could be realized above $39,000 would be nominal. The plaintiff contended more profit would be gained by selling condominiums than single-family residences but the extent of any such difference was not established. Since the difference claimed by the plaintiff was only $21,000—the difference between $60,000 and $39,000—any considerable reduction of this amount consonant with the opinion of defendant's expert, would seem to reduce the hardship on the plaintiff from an economic standpoint to a level not justifying holding the zoning ordinance of a municipality invalid on the ground of its being confiscatory.

In considering the economic aspects of the matter we cannot disregard the fact that the beneficial owners of the trust are land investors who acquired the property initially for the purpose of making a profit from it, knowing of the single-family restriction when they acquired it. Indeed, the testimony indicated that they had obtained, through Shefner, a less restrictive zoning classification than originally existed, after the purchase of the property. The change contended for now would increase their profit, but it is not contended the original contemplated use would not also be profitable. The difference seems to be in the *amount* of the anticipated profits.

■■ There is, therefore, no persuasive evidence of economic hardship here and the circumstances are not conducive to sympathy for the plaintiff for such profit differential as there might be between the two uses. While an unreasonable and senseless zoning classification which deprives the owner of the fruits of his property is not to be upheld merely because the owner knew of the restrictive zoning when he acquired the property, nevertheless this is a factor to be considered in evaluating the hardship to the property owner. (*American National Bank & Trust Co. v. City of Chicago*, 30 Ill.2d 251; *Szeliga v. City of Des Plaines*, 4 Ill.App.3d 257; *Urban v. Madison County Building & Zoning Department*, 8 Ill.App.3d 775.) On the whole, therefore, it appears that the present zoning clas-

sification is far from confiscatory as applied to this property and does not justify its being overturned on the ground of hardship.

Nevertheless, the plaintiff contends, the zoning classification is invalid as applied to his property because the restriction to single-family occupancy is not reasonably related to the health, safety, convenience or welfare of the community, and it therefore cannot be upheld even though there might not be a severe financial loss to the plaintiff by this restriction, citing the case of *Berger v. Village of Riverside*, 69 Ill.App.2d 148. However, the cited case involved a case of "transitional zoning" whereby it was attempted to set up a differential in use along only two blocks of Harlem Avenue inconsistent with the uses on either side of the transitional stretch. Moreover, the evidence seemed to clearly indicate that the property was not suitable for the present zoned use and was more suitable for the proposed occupancy. We do not quarrel with the result reached in that decision but its fact do not seem relevant to the case before us.

■■ In any event, however, the plaintiff's argument on this point assumes that the burden of proof is on the municipality to establish that its zoning classification as to this particular piece of property *is* reasonably related to the public health, safety, morals and convenience. But since a zoning ordinance is presumed to be valid until shown to be otherwise, we believe the burden is on the plaintiff to establish that the zoning is *not* so related, rather than on the city to show that it is. In *Gregory v. City of Wheaton*, 23 Ill.2d 402, 405-06, our supreme court said:

> "Where an owner seeks to have a zoning ordinance declared invalid as to his property he has the burden of proving it to be arbitrary and unreasonable. [Citation.] To sustain this burden it is not enough to show that the restriction works a hardship on him, or that the desired use would not substantially impair the public health, safety, or welfare. [Citation.] Zoning is primarily a legislative function subject to be reviewed by the courts only for the purpose of determining whether the power, as exercised, involves an invasion of private rights without reasonable relation to the public welfare."

Aside from the changes imposed by the court decree above referred to the predominant character of the neighborhood in the case before us is single-family occupancy. While a multifamily occupancy is not in itself undesirable, the question here is whether the restriction to single-family occupancy in this case is so manifestly unrelated to the public welfare as to make its retention unreasonable and arbitrary.

■■ No such showing was made. It is not, of course, enough for the plaintiff to show that multifamily occupancy is a reasonable use of the

land in question. It is incumbent upon them to establish that the present zoning as applied to the property involved has not that relationship to the public welfare required to sustain the restriction as a valid exercise of the City's zoning powers. At most, the plaintiff's testimony only established that a multifamily occupancy would not be unduly burdensome to the community from the standpoint of schools, fire protection and traffic—it did not establish that such use was the highest and best use of the land or that the plaintiff would suffer undue hardship if it was continued.

■■ This leaves, as plaintiff states, a very narrow issue. The trial court found that there would be one negative factor involved in changing the zoning—that it would have a tendency to depreciate the value of the surrounding single-family dwellings. The City has a legitimate interest in maintaining these values and it is reasonably related to the public welfare. Against this is the claimed right of the plaintiff to use the land as it sees fit. This, however, is a qualified right and subject to the zoning powers of the City.

In the absence of a showing of hardship or confiscatory result sufficient to overcome the municipality's interest in protecting the values of the neighboring residential properties, we find no valid reason to avoid the present zoning.

The judgment of the trial court is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.