(No. 34228.—

James W. Kennedy, Appellee, *vs.* The City of Chicago, Appellant.

*Opinion filed May 23, 1957.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (JOHN P. MURRAY, and ERWIN H. GREENBERG, of counsel,) for appellant.

BRUNDAGE & SHORT, of Chicago, (HOWARD A. BRUN-
DAGE, CHARLES F. SHORT, JR., and NARCISSE A. BROWN,
of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellee, James W. Kennedy, filed a complaint in the
circuit court of Cook County for a declaratory judg-
ment that the zoning ordinance of the city of Chicago, as
amended, is invalid in its application to certain of his prop-
erty. The land in question was zoned for commercial use
under the original zoning ordinance of 1923 but, by com-
prehensive amendments made in 1942, was rezoned for
uses within an apartment house classification. Appellee
sought a restoration of the commercial classification on the
ground that the present zoning is arbitrary, unreasonable
and unrelated to the public health, safety or welfare, and
such relief was granted upon the findings and recommenda-
tions of a master who heard the evidence in the cause. The
city has appealed directly to this court for review, the trial
judge having certified that the validity of a municipal ordi-
nance is involved and that the public interest requires such
an appeal. In entertaining the appeal as a matter within
our jurisdiction, we note the record presented makes no
disclosure of whether the ordinance in question provides
appellee with an administrative remedy for the relief sought,
or whether such remedy had not been exhausted, so as to
bring the appeal within our recent decision in *Bright* v.
*City of Evanston,* 10 Ill.2d 178.

The property of appellee is vacant and consists of eight
lots, each with a frontage of 25 feet and a depth of 76 feet,
which face along the east side of Kenton Avenue. The
south side of the rectangle formed by the lots abuts on
West End Avenue, while the north and east sides are
bounded by public alleys. Directly across Kenton to the
west, and running parallel thereto, is an unfenced railroad
embankment, eighteen feet high, atop of which are tracks

of the Chicago, Western & Indiana Railroad Belt Line. Appellee's land is located in an area approximately one-city-block square which is bounded on the west by Kenton Avenue, on the north by Maypole Avenue, on the east by Kilbourn Avenue, and on the south side by West End Avenue. The area is bisected by Kolmar Avenue, (formerly 45th Court,) which extends for a distance of one block between West End and Maypole. Three fourths of the area, as well as the south side of West End and the north side of Maypole which face it, is improved with residential structures ranging from brick apartment and flat buildings to single family dwellings of both frame and brick construction. There are no commercial uses or buildings in the area and the only vacant property is the eight lots of appellee and six lots to their rear which front on Kolmar. While of varying ages, photographic evidence shows the residential structures to be in good repair and neatly kept. Further there was testimony by residents, and one expert, to the effect that a commercial use of appellee's property would increase hazards for children, that a decrease in the value of surrounding residential property would result, and that properties had been purchased in the area with reliance on the existing residential classification.

It is the contention of the city that appellee's property is characterized for zoning purposes by the immediate residential area of which it is a part. Appellee, however, insists the residential area described is but an integral part of a greater area extending approximately two blocks in all directions, including land to the west of the railroad embankment. From evidence showing the presence of numerous business and commercial uses in this enveloping area and from the master's finding that the presence of the railroad dominates the use of adjoining property and inhibits its use for residential purposes, appellee maintains that his land can, reasonably, only be characterized as commercial. Further evidence for appellee established that he bought

his lots in 1952, and an expert testified that their highest and best use was for commercial purposes. Unlike the expert for the city, appellee's expert saw no possibility that appellee's lots would have any desirability for residential uses.

We are of the opinion the proof fails to show an unconstitutional discrimination against appellee's property. It is true there are numerous business and commercial uses in the area which envelops the residential district in which the property lies, but the evidence also shows that the same area is interspersed with residential uses to such a degree as to make it questionable from what use appellee's property should take its character. Apart from this, appellee's land is an immediate part of a compact, homogeneous area which lends itself to zoning as a single area and for a single purpose. (Cf. *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) No commercial users were attracted to this area while it was so zoned from 1923 to 1942, and it is apparent that the city, by its amendatory classification made in 1942, sought only to preserve the residential character of its development.

The fixing of boundary lines, unless arbitrary and capricious, is a matter of legislative judgment which courts will respect. (*DeBartolo* v. *Village of Oak Park,* 396 Ill. 404.) Where there is room for a fair difference of opinion concerning the reasonableness of a zoning classification, the legislative judgment likewise commands our respect. (*Fox* v. *City of Springfield,* 10 Ill.2d 198; *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253.) The facts of the present case make these principles singularly applicable, for the evidence, at best, shows it is debatable whether the residential area in which appellee's land finds itself should be preserved, or whether it should be swallowed up by the random business and commercial uses in areas which envelop it. There is a presumption of validity in favor of a zoning ordinance adopted pursuant to a legislative grant

and the one assailing its validity has the burden of proving the regulation is invalid, arbitrary or unreasonable as to his property. (*Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291.) Not only has appellee failed to sustain this burden but we may consider too that when persons have bought property in a certain district under a general zoning ordinance they have a right to rely upon the rule of law that its classification will not be changed unless the change is required for the public good. *Wesemann* v. *Village of La Grange Park,* 407 Ill. 81.

Nor does the presence of the railroad embankment across from appellee's property serve to alter the conclusion we have reached. In *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162, we held that, in metropolitan areas, it is unrealistic to argue that railroad tracks arbitrarily control the zoning classification of adjoining land and that each case must necessarily be decided upon its own facts. Here there is no showing that the railroad has been adapted to serve industry or business in the area, nor is there evidence that the railroad services are either desired or needed by commercial enterprises in the area. What does appear is that the railroad embankment, at this point, is a reasonable and proper dividing line which creates a buffer between the industrial uses to the west of it and the residential district to the east of it. Appellee asserts some distinction should be made because his lots are platted so as to face the railroad tracks, as contrasted with other residential lots in the area which run parallel to the embankment. We see no controlling difference in this circumstance, for if the presence of the embankment can be said to have any influence at all on the property along the east side of Kenton Avenue, the influence would be the same whether the front or side of a residence faced the railroad. Under this point appellee also suggests that he is discriminated against because all property facing the railroad embankment in the area is, with the exception of his property,

zoned commercial. The emptiness of this charge is established by maps in evidence which show that in the immediate areas flanking appellee's land along Kenton, between Washington Boulevard and Fulton Street, there is no other land platted so as to face Kenton Avenue, or any commercial structure which faces the railroad right of way.

When determining whether an alleged invasion of property rights by a zoning ordinance is unreasonable and confiscatory, the degree to which values are diminished by the restrictions of the ordinance is always proper to consider. Such factor is, however, not of itself determinative particularly where, as here, the proposed use would depreciate the value of other property in the area. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350.) The record before us discloses the master's findings and recommendations were motivated greatly by evidence showing that many of the residences which would be affected by a change of zoning predated the original zoning ordinance, and by the opinion of appellee's expert that the disputed property would be relatively valueless unless rezoned. Regarding the first point we are not aware of any rule of law which ordains that older residences, as distinguished from new ones, are not entitled to the protection of zoning laws, particularly where, as here, the older residences are shown to be in good repair and to have undergone extensive modernization. The fact remains, unrefuted by appellee's proof, that a commercial use of his lots would depreciate the value of residences in the area.

As to the second point relied upon by the master, it is true in almost every zoning case of this nature that residence property would have a greater value if zoned for commercial purposes. Such fact is not, however, a sufficient reason for upsetting a zoning ordinance, and where it appears that the restrictions imposed protect the health, safety, or welfare of the public, they must be sustained even though private interests are to some extent impaired.

(*Fox* v. *City of Springfield,* 10 Ill.2d 198.) Here appellee has made no showing that the residential classification is unrelated to the public good, nor is there any showing that his land may not be profitably utilized by some use, other than residential, which is permitted in an apartment-house district. No showing has been made of what commercial use appellee proposes to make of his property, (although we find it stated he at one time used it for the storage of empty oil drums,) and we may consider too that he purchased it in 1952 in the face of existing restrictions and presumably at residential prices. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350.) As opposed to the foregoing, there is evidence that a continuation of the apartment classification will minimize hazards for children of the area, preserve its residential character, and maintain the values of existing residential structures. Under such circumstances we must hold any gain appellee may realize through a change of zoning, must give way to the public benefits to be realized from a continuation of the present classification.

As a concluding point, appellee urges that where the evidence is conflicting the credibility of witnesses and the weight to be afforded their testimony should be determined in the trial court. This principle can have little if any application where all the evidence discloses a legitimate difference of opinion concerning the reasonableness of the challenged zoning classification, and similar differences on the question of whether the benefits to the public should prevail over the gain sought by one seeking to change the classification. Cf. *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253, 258.

For the reasons stated the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*