Lakeland Bluff, Inc., Plaintiff-Appellee, v. County of Will, a Body Politic and Corporate, Defendant-Appellant.

Gen. No. 69–3.

Third District.

November 7, 1969.

Louis R. Bertani, State's Attorney, by Arthur T. Lennon, of Joliet, for appellant.

Robson, Masters, Ryan, Brummond & Belom, of Joliet, and Sidney Z. Karasik, of Chicago, for appellee.

ALLOY, J.

The owner of the property involved in the cause before us first sought to have the property in Will County rezoned. When this request was denied, plaintiff Lakeland Bluff, Inc., sought to have the Will County zoning ordinance, as it relates to the property of plaintiff, declared invalid. The trial court decreed that the Will County ordinance was invalid as it applied to the property of plaintiff and granted the injunctive relief requested. The County appealed from such judgment.

The record discloses that in 1962, Patrick D. Fahey of Joliet, Illinois, purchased 700 acres of land near Braidwood in Will County, Illinois. In 1966 Mr. Fahey conveyed the 160-acre tract, which is the subject of the present litigation, to Lakeland Bluff, Inc., a corporation, in which Mr. Fahey owned all the stock. The property in question was zoned "F" (Farm District). Under such "F" classification the following uses were permitted: (1) airports, (2) cemeteries, (3) fairgrounds and race-tracks, (4) farming, (5) landfill garbage disposal, (6) government military reservations, (7) game preserves, (8) milk bottling plants and creameries, (9) road construction material and processing plants for six-month periods, (10) monasteries, etc., (11) portable stands for sale of products, (12) penal institutions, (13) pigeon lofts and poultry farms, (14) pipelines, (15) garbage incinerators and sewer treatment works, (16) recreational camps, (17) sanitariums and similar institutions, (18) trap shooting, (19) temporary carnivals, and (20) various farm operations, gardening, veterinary hospitals and power plants. There was no specific provision which would allow mobile home developments in such "F" district and, accordingly, plaintiff sought rezoning of the 160-acre tract to "B-5" district. After application to the Will County Zoning Board of Appeals, this request was denied, and the denial was approved by the Board of Supervisors of Will County in October of 1967. The present injunction action was then undertaken, after a showing that the plaintiff had exhausted its remedies in seeking rezoning relief.

The 160-acre tract is an irregularly shaped parcel of land about one mile northeast of Braidwood, Illinois. It is bounded on the north by Route 113-S (Coal City Road); on the east by Route 129 running parallel to the G. M. & O. Railroad as well as Alternate Route 66; on the west by a local gravel road and on the south it adjoins

270

a larger tract of which it was originally a part. All the land was formerly used for coal strip mining and was thus broken up into mounds, water holes and small lakes. The land is substantially useless for farming. Across the road to the north is the Wilmington Recreation Club which is a private recreation club using about 480 acres, with a membership of approximately 850. The activities of the club include boating, fishing, and camping, and camping trailers are permitted on the club property and can be seen from the highway running along the north side of the 160-acre tract in question. Another similar recreational area borders the property on the south and the southeast covering a tract of approximately 1,000 acres. There is farmland to the west of the 160-acre tract. The balance of the area around the 160-acre tract consists of land formerly used for strip mining and is abandoned so far as usage is concerned.

The cause was heard by the trial judge wthout a jury. At the hearing of this cause before the trial judge, a Mr. Richard Vaughan, employee-community relations supervisor for Uni-Royal, Inc., testified on behalf of the plaintiff. He pointed out that Uni-Royal, Inc. operates the Joliet Arsenal which covers 32 square miles of area in Will County and is only four miles from the 160-acre tract involved in the action. He referred to the importance of Uni-Royal in the national defense program, pointing out that this company produces one-half of the TNT produced in the United States. He further testified that the company had a labor shortage in the Joliet area and that he felt that the basic cause of the labor shortage was the lack of low-cost housing in the area for employees. Mr. Vaughan indicated that the proposed 1,200 mobile home unit on plaintiff's 160-acre tract would satisfy the need for housing the area and would allow Uni-Royal plant to employ hundreds more individuals. He stated that the need for immediate low-cost housing in the Arsenal area was desperate.

Mr. Paul Meyers of Northern Illinois Gas Company also testified that industrial development in the Joliet area was handicapped because of the shortage of low-cost housing and that a mobile home development would be a benefit to the area and help alleviate that situation.

The secretary of plaintiff-corporation testified as to the nature of the proposed mobile home site development. He pointed out that it would be designed for approximately six and one-half mobile home units per acre which was shown to be low density as compared with other comparable mobile home facilities. Each mobile home would have its own concrete slab and would be serviced by underground utilities, including sewage disposal. The development would have private roads, maintained by the owner, and the roads would be designed to be used by the 1,200 mobile home dwellers. The mobile homes would range from one to three-bedroom units. There would also be shopping facilities, a recreational area, private police and fire services, all provided by the owner at the owner's expense. The testimony distinguished the facility planned from what is known as a "trailer park," the chief difference being in the amount of services offered and the physical planning of the project.

A real estate broker from Joliet, Mr. Herb Regan, testified that farmland in the area would be worth $400 an acre but that it was his opinion that the 160 acres involved in the instant case would only bring about $50 an acre as zoned under the ordinance. If rezoned to allow a mobile home development, Mr. Regan stated that the land might be worth as much as $15,000 an acre. He also testified that in his opinion there would be no reduction of land values of nearby property if the 160 acres were developed for mobile homes.

The chief witness for the plaintiff was Mr. George H. Kranenberg, a professional planning and zoning expert. He was shown to have wide experience in the zoning and plan-

ning field. He testified that he considered the physical nature of the 160 acres, the uses of the land nearby, the character of the entire neighborhood, and, also, the need for additional low-cost housing in the area. Based upon these factors and others which he felt appropriate to consider, Mr. Kranenberg stated that the most feasible or the most suitable use of the 160 acres would be for the mobile home facility proposed by the plaintiff. He pointed out that to permit such facility would allow the area to be reclaimed and that many of the uses under the existing "F" classification, such as a garbage fill or airport, were not feasible for the area. He also pointed out that although the 160 acres could be used for some recreational facilities, there were already 1,500 acres of recreational land in the immediate area.

Mr. Kranenberg noted that the 160 acres was buffered on all sides by roads and, thus, there would be, in his opinion, "absolutely no detrimental effect" on the surrounding property. The witness testified that the mobile home development in his opinion would actually benefit the area both economically and in the use of land which was otherwise wasted. He pointed out also that although he had testified many times in court actions both for and against municipalities, this was the first time he had ever testified in favor of a particular site for a mobile home development, for the reason that in his 35 years of experience he had never seen a better site for such mobile home development. The witness also concluded that the development would not be incompatible with the use of land surrounding the 160-acre tract since there were numerous house trailers in the area and, also in the City of Braidwood. He concluded that due to the physical condition of the land (abandoned strip mining property), the site was more conducive to a mobile home development than to development for single-family homes.

Mr. Rolf Campbell, a planner and consultant who testified for the defendant county stated that the highest and best use of the 160-acre tract would be for recreational purposes. He also concluded that such use would contribute the most to the economy of Will County. He also stated that a development for mobile homes would be detrimental to the adjacent property to the west, but it was not apparent from his testimony in what respect this detriment would arise. Mr. Campbell also pointed out that a mobile home development would bring in many people to the area and that the tax obtained from the mobile homes could not finance roads, schools and other services which would be needed as a result of the mobile home development. A Mr. Sheldon C. Bell, a real estate broker, testifying for the County of Will, stated that in his opinion the highest and best use of the property was for recreational purposes. He pointed out also that there had been no growth in the Braidwood area over the last years.

Upon conclusion of the hearing, the trial court found that the property was formerly used for strip mining and could not presently be farmed. The court further found that plaintiff had shown the great need for low-cost housing in the area and that mobile homes would cost about one-third as much as permanent dwellings and could be developed much more quickly than permanent dwellings, thus better supplying a critical housing need. The court also found that a mobile home development was the most appropriate use of the property, as the area was buffered; that the tract was wasteland which would be reclaimed; and that the need for housing in the area would be fulfilled. The Court likewise found that the testimony of defendant's witnesses, that this area should be used for more recreational area, was not supported by the evidence. The court additionally concluded that the use of the property for mobile home development would not diminish property values in the area any more than any of the

uses authorized in an "F" zoned area. In essence, the conclusion of the trial court was that appropriate use of the property involved in the cause before us was for a self-sufficient mobile home development. The court concluded that the zoning ordinance of Will County has denied plaintiff the right to the use of the property for such purpose and that the ordinance was invalid and void and of no effect in its application to the property to the extent that it limited such use.

The issue on appeal, therefore, is whether the ordinance of Will County, in denying plaintiff the right to the use of its property for a self-sufficient mobile home development was arbitrary and unreasonable and without substantial relation to the public health, safety, morals and welfare. An alternative method of stating the questions presented specifically for review is (1) whether the so-called presumption of "legislative validity" was rebutted and overcome in the cause before us, and (2) whether the findings of the trial court and the judgment were based on sufficient evidence to warrant the zoning relief prayed for.

 The presumption of validity which arises from enactment of a zoning ordinance can be overcome by clear and convincing evidence that the ordinance, as applied to the subject land, was arbitrary and unreasonable and without real or substantial relation to the public health, safety, morals and welfare (Urann v. Village of Hinsdale, 30 Ill2d 170, 174–175, 195 NE2d 643). The courts of this State have recognized that the validity of each zoning ordinance must be determined on its own facts and circumstances (La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 46, 145 NE2d 65). Following the case of Krom v. City of Elmhurst, 8 Ill2d 104, 133 NE2d 1, where the court began to set forth guidelines for determining whether a particular ordinance was invalid as related to the property of the person challenging the ordinance, the court in La Salle Nat. Bank v. County of

275

Cook, 12 Ill2d 40, 145 NE2d 65, at pages 46–47, grouped the various factors for consideration under six general headings, stating:

". . . among the facts which may be taken into consideration in determining the validity of an ordinance are the following:

"(1) The existing uses and zoning of nearby property. . . .

"(2) The extent to which property values are diminished by the particular zoning restrictions. . . .

"(3) The extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public. . . .

"(4) The relative gain to the public as compared to the hardship imposed upon the individual property owner. . . .

"(5) The suitability of the subject property for the zoned purposes. . . .

"(6) The length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. . . ."

The six general factors referred to in the La Salle Nat. Bank case have been quoted in numerous Illinois cases since they were first outlined (Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584; Atkins v. County of Cook, 18 Ill2d 287, 163 NE2d 826). Both parties in the cause before us refer to the six points outlined in the La Salle Nat. Bank case and each party attempts to show that when these factors are applied to the facts in the instant case they point to a decision favoring the views of the respective parties. There is basically no dispute as between the parties as to the law which is ap-

plicable in the cause before us but rather over the applicability of the rules to the facts in the cause before us.

■ It is contended by the county on appeal in this case that the court, faced with expert testimony on each side, was confronted with a difference of opinion with respect to the reasonableness of the ordinance, and that the legislative presumption should, therefore, be conclusive. The mere fact that there is expert testimony on each side does not mean that plaintiff has automatically failed to rebut the presumption with respect to the validity of the ordinance. The court pointed out in La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65, at page 47:

> "Much evidence was heard concerning traffic conditions, general character of the neighborhood, highest and best uses, valuations, etc. Each side produced expert witnesses to sustain its contentions. Difference of opinion does not render plaintiff's evidence unbelievable or require a finding that the reasonableness of the ordinance is debatable."

Similarly, in Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584, at page 181, the court stated:

> "Mere conflict in testimony as to the highest and best use of property, the impact of the proposed land use of the areas involved or its effect upon property values, does not make irrebuttable the presumption that an ordinance is valid. A difference of opinion does not render the evidence of one party unbelievable, or require a finding that the reasonableness of an ordinance is debatable. In a trial before the court without a jury, the credibility of witnesses and the weight to be accorded their testimony are still to be determined by the trier of fact. Unless manifestly against the weight of the evidence, his findings will not be disturbed. North-

277

ern Trust Company v. City of Chicago, 4 Ill2d 432."

■ On the basis of the record before us, we cannot say that the findings of the trial court were manifestly against the weight of the evidence. While it is not necessary to repeat such evidence in detail, the testimony of witness Kranenberg could have been accepted by the trial court as far more convincing than that of any witness for defendant. Such testimony was detailed and specific in its analysis and clearly supported the opinions and conclusions of the witness. The courts of review will not disturb the findings and decree of the chancellor unless such findings and decree are contrary to the manifest weight of the evidence and that the opposite conclusion is required on the basis of the record (La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 48, 145 NE2d 65; Myers v. City of Elmhurst, 12 Ill2d 537, 547, 147 NE2d 300; Atkins v. County of Cook, 18 Ill2d 287, 297, 163 NE2d 826).

■ Apparently, one of the major reasons that Will County refused to rezone the property when first requested may have been the feeling that the development would possibly cause an increase in local government costs for schools, roads and other facilities. Such considerations, however, could not be a justifiable basis for rejecting an appropriate use of the property (First Nat. Bank of Skokie v. Village of Skokie, 85 Ill App2d 326, 339, 229 NE2d 378). In the Skokie case, the court pointed out that on the simple economics of the issue, it is obvious that if future developments were limited to commercial or industrial enterprises, there would be more tax money without the addition of any school children; that the fiscal position of the school board would be strengthened but only at the cost of circumventing the reason for having schools. We do not believe that such consideration should be a basis for rejection of a re-

278

quest for rezoning or usage which is consistent with the general objectives of the zoning ordinance.

■ While we do not predicate our conclusion upon the need for lower cost housing, we believe that this was an element which should be considered in determining the reasonableness of the restrictive zoning ordinance. The need must necessarily be balanced as against the question of its effect upon the neighboring property, etc. While many of the uses which are authorized by the "F" zoning classification would be more detrimental than the mobile home development, we believe that the court rightfully considered the mobile home development on the basis of its impact in the community, and not as a lesser evil.

In applying the six factors which were emphasized as basic considerations in the La Salle Nat. Bank v. County of Cook case (12 Ill2d 40, 145 NE2d 65), we believe that the trial court was correct in its findings and judgment. The trial court should have, and apparently did consider the factors referred to in making its determination.

The existing uses and zoning of the property adjacent and nearby to the property in question is a factor to be considered. Although the area around the 160-acre tract was zoned "F," it was shown that the tract in question could not be farmed or used for many of the uses which were permitted in the "F" zoning. The existing uses of nearby property were shown by the record to be compatible with the mobile home development, since the adjacent property was used for recreational areas which included campers and trailers.

Considering the extent to which property va.ues are diminished by the particular zoning restrictions, the evidence disclosed that the 160-acre tract was virtually worthless as farmland and could only bring about $50 an acre and that most of the other uses permitted under the "F" classification were not feasible for the tract. It

could be worth $15,000 an acre if developed for mobile homes. There was no substantial evidence of any detrimental effect on neighboring property and the record might well have justified the conclusion that the effect would be just the opposite, since the additional people who would move into the tract would need services.

On the question of the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, there is direct evidence that the proposed use of the property for mobile home development would have no detrimental effect upon the surrounding uses. There was no showing of any benefit to be obtained by preventing plaintiff from using the tract for mobile homes other than the possible need for additional services resulting from the increased population. It is apparent that the subject property would be properly buffered and that such buffering is ideal for mobile home development.

The relative gain to the public as compared to the hardship imposed upon the individual property owner should also be considered. The hardship to the plaintiff in the case before us is apparent. His property has very little value as farmland and might well be worth $15,000 an acre if developed for mobile homes. The circumstance that plaintiff purchased the tract knowing that it was zoned "F" does not preclude the plaintiff from objecting to such classification (La Salle Nat. Bank v. City of Evanston, 24 Ill2d 59, 64, 179 NE2d 673; Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584). There was little showing of any gain to the public by forcing a retention of the "F" classification and in the words of the court in the Bauske case, supra, at page 181:

> "It is not the monetary loss to the plaintiffs which here compels a finding of invalidity, but that such loss is utterly unrelated to any substantial public benefit to be derived."

280

The court is also justified in considering the suitability of the subject property for the zoned purposes. The record shows that the tract was zoned for farming and that it could not be farmed. A number of other uses authorized under the zoning ordinance were shown not to be feasible for the particular tract. The only permitted use which defendant contended was the best use for the tract was a recreational use. The record shows, however, that there were 1,500 acres of recreational property in the area. To conclude that plaintiff must operate under such classification when the only practical use of the property is for unneeded or uneconomic recreational purposes, in effect is saying that the property is not suitable for the purpose for which it was zoned.

The final consideration is the length of time the property has been vacant as zoned, considered in the context of land development in the area, in the vicinity of the subject property. The only recent use to which the property has been put apparently is strip coal mining. The mines are now exhausted and the land is vacant and unimproved. This has been the condition for a number of years. The expert's opinion on behalf of plaintiff indicated that a mobile home development in this buffered area would be a good reclamation of otherwise unusable land.

 While it is appropriate to consider all of the six factors to which we have referred, some factors will weigh more heavily than others. As stated in La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65, at pages 47–48:

> "No one factor is controlling. It is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance

fails and the presumption of validity is dissipated. (Krom v. City of Elmhurst, 8 Ill2d 104.) The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."

With respect to a consideration of the entire record and the evidence which has been presented in this cause and in view of the finding of the trial judge, we should again look to the language of La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65, at page 48, where the court states:

"After examining the record we are satisfied that the master in chancery and trial court were justified in their conclusions. There is naturally a conflict of testimony in cases of this nature and the credibility of witnesses is of great importance. The triers of fact are in a superior position to that of a reviewing court in such a situation. When testimony is contradictory in a trial without a jury the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence. We believe the findings and judgment of the trial court are supported by the evidence and should be affirmed.

In view of the record and the precedents to which we have referred, we do not feel that this court would be justified in rejecting the determination of the trial court. The judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.